IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 26, 2012

## JAMES R. OLIPHANT v. THE STATE OF TENNESSEE

**Appeal from the Chancery Court for Davidson County**
**No. 11-1007-I     Claudia Bonnyman, Chancellor**

---

**No. M2011-02132-COA-R3-CV - Filed May 23, 2012**

---

This common law writ of certiorari was filed by an inmate, who asserted that the parole board violated his rights by returning him to jail for violating his parole. The trial court dismissed the case without prejudice because the inmate failed to pay any portion of the initial filing fee or to issue a summons to the parole board. Affirmed.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

James R. Oliphant, Tiptonville, Tennessee, for the appellant, pro se.

James Lee Pope, Assistant Attorney General, for appellee, State of Tennessee.

## MEMORANDUM OPINION[1]

On July 26, 2011, Petitioner/Appellant James R. Oliphant filed a *pro se* Petition for Common Law Writ of Certiorari in Davidson County Chancery Court. The petition alleges that the Respondent/Appellee Tennessee Board of Probation and Paroles ("the Board")

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

violated Mr. Oliphant's due process rights by revoking his parole. Specifically, the petition alleged that: (1) Mr. Oliphant was not given an opportunity to be heard within a reasonable time after being booked and taken into custody pending a final decision of the Board; (2) the Board improperly relied on hearsay; (3) the Board did not disclose evidence properly; (4) the Board did not allow Mr. Oliphant to present witnesses in his defense; and (5) the Board acted arbitrarily and illegally in accepting the testimony of a police officer that domestic violence charges were still pending against Mr. Oliphant without documentary evidence.

According to his petition, Mr. Oliphant was served with a parole violation warrant on August 20, 2010. Mr. Oliphant was charged with domestic violence, alcohol use, and the failure to pay required fees, all in violation of the terms of his parole. He was arrested and transferred to the West Tennessee State Penitentiary on September 2, 2010, where he was given a Notice of Charges and a document titled "Explanation of Rights."

Mr. Oliphant waived his preliminary hearing and a revocation hearing was scheduled for November 27, 2010 before a hearing officer. The hearing officer directed the Institutional Probation and Parole Officer ("IPPO") to assist Mr. Oliphant in subpoenaing witnesses.

The hearing officer conducted a final revocation hearing on March 4, 2011. Mr. Oliphant's parole was revoked. On May 3, 2011, Mr. Oliphant appealed the decision to revoke his parole to the Board. On May 24, 2011, Mr. Oliphant's appeal was denied by the Board.

Mr. Oliphant thereafter timely filed the petition at issue in the Davidson County Chancery Court. However, Mr. Oliphant failed to serve the Board with a copy of the petition or a summons.[2] In addition, Mr. Oliphant failed to comply with the requirements of Tennessee Code Annotated Sections 41-21-801 *et. seq.*, including failure to file an inmate affidavit pursuant to Tennessee Code Annotated Section 41-21-805 and failure to make partial payment of the initial filing fee as required by Tennessee Code Annotated Section 41-21-807. Accordingly, the trial court entered an order on August 17, 2011, directing Mr. Oliphant to comply with the above requirements within thirty (30) days. The order noted that the failure to comply would result in Mr. Oliphant's case being dismissed.

Mr. Oliphant subsequently filed a uniform affidavit of indigency, a Tennessee Code Annotated Section 41-21-805 & 806 inmate affidavit, and an Inmate Trust Certification Balance. However, nothing in the record reflects that he made partial payment on the filing

---

[2]The Board did not appear at trial, nor did it appear or file a brief on appeal.

fee or issued summons to the Board. Accordingly, the trial court dismissed Mr. Oliphant's case without prejudice on September 19, 2011. Mr. Oliphant timely appealed, arguing the following issues, which are restated from his brief:

1.  Whether the trial court erred in summarily dismissing the petition for a common law writ of certiorari on the ground that Mr. Oliphant had not paid any amount toward the initial filing fee?

2.  Whether the trial court erred in summarily dismissing the petition for a common law writ of certiorari on the ground that Mr. Oliphant had not filed any summons for issuance?[3]

Mr. Oliphant first argues that the trial court erred in dismissing his petition for failure to prosecute based on his failure to pay a portion of the initial filing fee. "Because decisions to dismiss for failure to prosecute are discretionary, **White v. College Motors**, 370 S.W.2d 476, 477 (Tenn. 1963), this Court will second-guess a trial court only when it has acted unreasonably, arbitrarily, or unconscionably." **Hodges v. Tenn. Attorney Gen.**, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000).

A litigant commencing a civil action in a Tennessee court must file a cost bond and pay an initial filing fee. Litigants who are indigent may be excused from filing a cost bond by filing an affidavit stating that they are justly entitled to legal or equitable relief but are unable to bear the expense of the litigation because of their poverty. Tenn. Code Ann. § 20-12-127. Upon the filing of an appropriate affidavit of indigency, the costs are held in abeyance until the end of the litigation. *See* Tenn. Sup. Ct. R. 29 (stating that "any civil action may be commenced by a resident of this state without giving security as required by law for costs and without payment of litigation taxes due by filing the oath of poverty set out in the statute and by filing an affidavit of indigency as prescribed by court rule").

---

[3] In his Statement of the Issues, Mr. Oliphant argues that the requirements that he pay a portion of the filing fee and serve a summons on the Board violate his "constitutional rights to due process and equal protection of the law pursuant to the Fifth and Fourteenth Amendments of the United States Constitution." We decline to consider the constitutionality of the above requirements. Mr. Oliphant makes no argument in the body of his brief that these requirements are unconstitutional, nor does he cite any authority questioning their constitutionality. Instead, Mr. Oliphant only argues that the trial court applied the requirements wrongly. In addition, nothing in the record indicates that Mr. Oliphant sent notice to the Tennessee Attorney General that he was challenging the constitutionality of these requirements. It is well-settled that "[a] party who wishes to challenge the constitutionality of a statute must provide notice to the Attorney General in the trial court of the party's challenge." Tenn. Code Ann. § 29-14-107(b); Tenn. R. Civ. P. 24.04.

However, indigent persons are not excused from paying the initial filing fees required by Tennessee Code Annotated Section 8-21-401(a). In 1996, The Tennessee General Assembly enacted Tennessee Code Annotated Section 41-21-807 to provide a procedure for collecting the required filing fee from inmates filing civil suits in state court.

Tennessee Code Annotated Section 41-21-807(a) requires inmates to file certified copies of their trust fund account statements for the six months immediately preceding the filing of the petition. In addition, Tennessee Code Annotated Section 41-21-807(b)(1) provides:

> If an inmate brings a civil action or files an appeal in forma pauperis, the inmate shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect as a partial payment of any court fees required by law, an initial partial filing fee of twenty percent (20%) of the greater of the average monthly:
>
> (A) Deposits to the inmate's account; or
> (B) Balance in the inmate's account for the six-month period immediately preceding the filing of the complaint or notice of appeal.

Mr. Oliphant's Trust Fund Certification balance shows that, as of July 1, 2011, Mr. Oliphant had $0.00 in his Trust Fund Account and that the average balance for the previous six (6) months was $7.43. Accordingly, Mr. Oliphant was required to pay $1.49 toward his initial filing fee. However, Mr. Oliphant failed to pay that amount, and the trial court ordered him to make a partial payment on the initial filing fee by September 17, 2011. As of August 29, 2011, Mr. Oliphant still had $0.00 in his trust account, but the average account balance for the previous six (6) months was $11.04. Therefore, in the thirty days after Mr. Oliphant was ordered by the court to pay the costs of this litigation, he was required to pay approximately $2.21 to the court as partial payment toward the initial filing fee. Accordingly, Mr. Oliphant had funds to make a partial payment on his filing fee, as required by Tennessee Code Annotated Section 41-21-807. Mr. Oliphant failed to comply with that requirement. This Court, in *Freeman v. Tennessee Dept. of Probation and Parole*, No. M2002-00958-COA-R3CV, 2003 WL 1798080 (Tenn. Ct. App. April 7, 2003), previously held that a trial court may properly dismiss a civil action filed by a *pro se* inmate when the inmate fails to pay a portion of the initial filing fee as ordered by the court. *Id.* at *3. This Court stated:

> [The inmate] failed to comply with the trial court's November

21, 2001 order in a timely manner and failed to present either to the trial court or this court any justification for his failure to do so. He is, therefore, the author of his own misfortune. Appellate courts need not grant relief to persons who failed to take whatever action was reasonably available to them to prevent or nullify the harmful effect of an adverse decision. Tenn. R. App. P. 36(a)

*Id.* at *2 (footnote omitted). Mr. Oliphant's only justification to this Court for his failure to pay a portion of the initial filing fee was that his trust account was depleted due to postage costs associated with this action. The record shows that Mr. Oliphant authorized $5.08 to be deducted from his trust account for postage to mail his petition to the Davidson County Court clerk on July 20, 2011. Even considering this deduction from his previous six months' balance, however, Mr. Oliphant had $2.35, enough funds to pay the required 20% of the balance in his inmate account as an initial partial filing fee. Mr. Oliphant also attached a document to his brief evidencing that he authorized another $5.08 to be deducted from his trust account on September 20, 2011 for postage. However, "[i]t is settled law that documents merely attached to appellate briefs cannot be considered by this Court because they are not properly part of the certified record." *Myers v. State*, No. M2004–02411–CCA–MR3–PC, 2005 WL 1541870, at *5 n.7 (Tenn. Crim. App. June 29, 2005) (citing *State v. Matthews*, 805 S.W.2d 776, 783–84 (Tenn. Crim. App. 1990)). Even if this Court were to consider the document, the form shows that Mr. Oliphant authorized the withdrawal of the funds one day after the trial court dismissed the action, rather than within the thirty-day time-frame given by the court to pay a portion of the filing fee. Further, this document does not support Mr. Oliphant's argument that he was unable to pay the required filing fee. Instead, it shows that close to the time the trial court dismissed Mr. Oliphant's petition, he had at least $5.08 in his trust account, more than enough to cover his partial payment on the initial filing fee.

Based on the foregoing, we discern no abuse of discretion in the trial court's judgment dismissing Mr. Oliphant's petition based on his failure to pay a portion of the initial filing fee in a timely manner. Accordingly, we need not reach the issue of whether the trial court erred in dismissing the petition based on Mr. Oliphant's failure to issue a summons to the Board.[4] The judgment of the Davidson County Chancery Court is affirmed

---

[4] We note that nothing in the record indicates that Mr. Oliphant ever obtained proper service on the Board. Rule 4.01 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

(1) Upon the filing of the complaint the clerk of the court wherein the

(continued...)

and this cause is remanded to the trial court for collection of court costs. Costs of this appeal are assessed to Appellant James R. Oliphant. Because Appellant is proceeding as a pauper in this appeal, execution may issue against Mr. Oliphant for costs of the appeal if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[4](...continued)

> complaint is filed shall forthwith issue the required summons and cause it, with necessary copies of the complaint and summons, to be delivered for service to any person authorized to serve process. This person shall serve the summons, and the return indorsed thereon shall be proof of the time and manner of service. A summons may be issued for service in any county against any defendant, and separate or additional summonses may be issued against any defendant upon request of plaintiff. Nothing in this rule shall affect existing laws with respect to venue.

> ***

> (3) If a plaintiff or counsel for plaintiff (including third-party plaintiffs) intentionally causes delay of prompt issuance of a summons or prompt service of a summons, filing of the complaint (or third-party complaint) is ineffective.

Accordingly, timely issuance of a summons is a mandatory requirement. At the time the case was dismissed, however, Mr. Oliphant had not issued or served a summons on the Board. To explain this failure, Mr. Oliphant attaches to his brief documents showing that he attempted to mail a waiver of summons form to the Board on September 19, 2011 and to pay for the postage on September 20, 2011. However, as discussed *supra*, documents attached to briefs are not properly considered by this Court and this action was taken after the trial court had dismissed Mr. Oliphant's petition.